May it please the Court, Dan Roddinghouse appearing on behalf of the appellant Robert Young. Your Honors, this case comes to you with a very unique circumstance in an insurance coverage dispute in that the insured Mr. Young tendered a claim to the insurance carrier seven separate times over a period of almost 18 months and never received a response. At the same time, he was obligated to give him a response. I wasn't sure I understood that argument, because the insurance policy said that the company would be the receive and tender the claims and get the response. Your Honor, the policy did have a provision in there that the parent company or TRI, the named insured, would receive notices from the insurance carrier. But at the time of this particular dispute, Mr. Young was now a former officer. And it was known in a letter from counsel for TRI to the insurance carrier that he was former to a former officer and director and that they were adverse to one another. So I don't believe that the insurance company is relieved of the duty to, one, make sure that it finds out who that former officer and director is in order to give him notice. But more particularly, they received a letter seven separate times. They knew Mr. Young's counsel. They could have responded. So I don't think that there's an excuse within the policy itself that allows for the carrier to say, I met my obligation by sending a letter to TRI, the parent company. And let me add one additional thing to that, Your Honor. At the one time that they did respond to TRI, that is, the insurance carrier responding, that was at the initial complaint stage. After that, Mr. Young demurred to that cross-complaint. There was a new cross-complaint filed against Mr. Young. Subsequent to that, TRI, the company, and Mr. Fultz, an independent contractor working solely for TRI, filed a complaint. How do you know he was working solely? Pardon, Your Honor? How do you know he was working solely for the company? He was an independent contractor dedicated solely to working for TRI. How do you know that is the question? It's a factual issue, Your Honor, that the record itself doesn't say it. There's a pleading about it. Doesn't the complaint make pretty clear that Mr. Fultz was doing various other things? No, Your Honor, it doesn't. In fact the cross-complaint. Will you redo that? And it's paragraph 164? 164. Page 164. Yes, Your Honor. And look at the end of paragraph 3, just above 4, what it says about Mr. Fultz. If I'm looking at the correct sentence, Your Honor, it says, It doesn't sound like he's working only for. Your Honor, in the fee arrangement between Mr. Young and Mr. Rayburn, there's a conflict waiver. What? There's a conflict waiver. And within that paragraph, it makes reference to the fact that Mr. Fultz is an independent contractor working solely for TRI. No, I'm going by this. The juror can look at the complaint. Yes. And it says Fultz is in several businesses with Young. That pleading, Your Honor, is an allegation that's made by Rayburn. It's not correct. It's false. It's not true. It's on the face of. And paragraph 2 says that at all relevant times he was a licensed real estate agent, Fultz was a licensed real estate agent, and at all relevant times he held himself as president of Keystone Financial, a different corporation, and one from which Fultz served as president. Yes, Your Honor. I agree with what you're reading, but that's a factual determination that requires now a trial. In fact, the duty to defend says specifically within the clause that we'll defend you even if the claims against you are groundless or false or fraudulent. Those are not correct statements. No, but how can you say he worked solely when the allegations show that he did not? I agree that the allegation itself says that he didn't work solely. Well, where do you get the solely, then? Because the only record that we have, Your Honor, is that Mr. Fultz worked for TRI. Well, that doesn't show it. That shows nothing whether it's solely or on several things. Solely in the definition in terms of the record. Any time you show somebody's working, A is working for B, and that means he's working solely for B? If the only matter within the record itself, the dispute itself, is that he was working for TRI. These are in the record, too. These are allegations in the record. They're allegations and they're false. They need to have a ---- But this is what I don't understand. This is an insurance coverage issue. So the question isn't what's true. It's what the allegations and the underlying complaint are. Is this Rayburn's complaint that we're here? Your Honor, you're looking at Rayburn's cross-complaint, yes. Right. So ---- And you're correct that in an insurance coverage dispute, the first instance is to look at the allegations framed against the policy. All right. So why are we looking? So if the allegations framed against the policy are that Mr. Foltz was not solely working for TRI, why isn't that the end of that? Well, there's two things, Your Honor. The first one is that, in fact, the carrier also has an obligation to look at whether there's coverage if the complaint could be amended such that there would be coverage, and also that if there are extrinsic facts that would allow for the coverage. Here it's a triable issue of fact if the court were to find that Mr. Foltz was not within the definition of an employee in that particular part of the policy, the employment policy,  there's a potential for coverage, and that was not negated by the carrier in order to receive summary judgment. I mention also that in the response letter from the carrier to TRI, there's no reference, none whatsoever, to this employment practices section of the policy. And then even after seven separate tenders, and on the last tender they respond on the day before the mediation to resolve the case, they never address the employment practices section. Can you explain to me, because aside from this problem, I have a very hard time understanding what in the employment practices section has anything to do with this? What that section has to do, Your Honor, is that it says that if there's an employee claim against a member of the board for wrongful conduct, then it's covered. Okay. So of certain kinds. Of certain kinds. Okay. And the types, the kinds that we pointed out were specifically that there should have been a policy or there was a failure to enforce a policy about disclosures when you're working as a board member with a company for whom that independent contractor was working for. Or there was an implied agreement to deal fairly with that particular independent contractor because he was entitled to a commission. Those are defined as wrongful acts in the policy. Mr. Foltz. How are those related to the facts in this case? I'm having a hard time. How are they alleged in the case? This commission problem, for example. Yes. Mr. Foltz, along with TRI, was looking to collect his commission. He cross-claimed against Mr. Young because he was saying, I'm not getting my commission because you did a wrongful act as a member of the board of directors. That wrongful act was that you either failed to enforce a policy or you failed to adopt a policy that would have prevented this particular situation. But not in a policy. That policy would have had nothing to do with employment at all. The policy itself, Your Honor, was broken into two sections. There was a director's and officer's section. I'm not saying that. I understand that. Okay. The policy that you're saying wasn't adopted would be a policy that has nothing to do with employment practices. It would have to do with employment practices. It might be an employment practice whereby a board member makes a disclosure of a particular relationship. It could also be that if you're operating as a lawyer or as a real estate agent or something. I mean, my problem is that, you know, I've seen these employment provisions before, and clearly what they're intended to deal with is when employees sue the employer or somebody on behalf of the employer for something having to do with their employment. So the practice, for example, would be an employment-related practice, i.e., we're going to pay people a certain amount of money or we're going to discriminate against people or something to that regard. The practice you're describing has nothing to do with employment. No, I disagree, Your Honor. It has to do with this gentleman, Mr. Fultz, to earn a commission. It has to do with how he earns his pay. We could agree that payment is a part of somebody's employment contract. Right. But then when you started to explain why it has to do with how he earns his pay, you said because they should have had a practice that Mr. Young should have disclosed something to somebody about his dual representation. It may be his dual representation or that he had received a conflict waiver from his client in order to act for that client, who was also a client for Mr. Fultz. There could have been any number of, within the context of this arrangement because recall also that this arrangement closed in September of 2001. The complaint for Mr. Rayburn back against Mr. Young and then later Mr. Fultz against Mr. Young are several years after the fact, and they were related to the issue that Mr. Fultz didn't continue to monitor the Rosenshore transaction. He didn't continue to do accountings and oversee the payments. To whether Mr. Fultz was an employee or not as defined, was there anything in the record that would indicate that Illinois Union knew that he was or was not a contractor working solely for TRI? There is nothing in the record on that, Your Honor. In fact, the Illinois Union never took a statement from Mr. Young. Illinois Union never participated in the case whatsoever. So was there any reason why Illinois Union should have known that Fultz was an employee as defined, an independent contractor working only for TRI? Yes. By investigation, they could have called Mr. Fultz. They could have talked with TRI. They could have called Mr. Young. They could have done any of those things to find out that he was an independent contractor working solely for TRI. I say to you as a panel, it's a factual issue to be determined. It's not as a matter of law that they get judgment because they have not negated that that's actually the fact. Can I reserve my time? Can I reserve my time? Thank you. Darren LaMontre for the Appellee, Illinois Union. This case involves a pretty straightforward coverage dispute. Parties in the underlying case filed, parties in the coverage case filed cross motions for summary judgment. Mr. Young had a full opportunity to provide any and all evidence that he would have had to support his claim that the provisions of the policy were triggered and did not submit anything in the record here that shows that Mr. Fultz was solely an employee. He suggests that the insurer had a duty to investigate whether Fultz was an employee or not as defined as part of its very broad California duty to defend. Is that incorrect? Well, what I would say in response to that is that sometimes there's case law that suggests that upon review of the complaint, if there's no issues that would appear to impact the coverage, then the carer is free to provide, render its coverage position based on the known facts. Mr. Young is free to provide any additional facts that he believes are relevant. There was certainly plenty of opportunity for that. And even to this day, after having had the case proceed through court, there's no evidence that has been submitted to suggest that Mr. Fultz is solely the employee of TRI or was. You're saying that even if we don't just rest on the complaint, then if you had an obligation to go outside it, in this coverage litigation, he had an obligation to show what you would have found if he had gone outside it, and he hasn't done that? Correct. I believe his burden would have been to show that there would have been a difference had we looked, and I think that burden was not met. He says there's something in the record that says he was a sole employee. What was he referring to? Pardon me. I really don't know. I mean, Your Honors pointed out the parts of the record that I was going to address, and I think that those clearly indicate that there was. That's the complaint. And then there's nothing else. There's nothing else. Okay. What about, this is just amusing, I guess, but, not amusing, but amusing. I don't, I understand that California law has kind of morphed into this notion that what matters is whether there's a potential for coverage as a part of the duty to defend it, rather than whether there is a potential for damages given the coverage. Is that under any question at this point? It's a strange rule, because it means that you have a duty to defend even if there's, in fact, no coverage. But that's the rule. Is that right? I believe that, you know, within, stated generally, yes. I mean, there's limitations to that principle, but generally, that is true. I don't, obviously, we don't believe there was any potential for coverage here, based on the record. Based, you know, there was, with respect to the director's and officer's liability coverage, the exclusion cue for professional services is clearly rendered, is clearly triggered, based on the fact that the gravamen of the complaint involved professional services by Mr. Young and the law offices of Mr. Young. This all arose out of his retainer, his having been retained separately through his law practice to represent the interest of Rayburn, the underlying cross-complainant. And then there was the cross-complaint of TRA and Fultz, which germinated from that. I know that there's nothing in the record, or there's nothing from those allegations that would trigger an employment practices liability coverage, because that, as Your Honors had discussed earlier, the focus of an employment practice liability coverage is to cover for wrongful termination or discrimination or harassment. Well, it does have the word misrepresentation. So, I mean, the argument is if Fultz is an employee, which is defined as an independent contractor under certain circumstances, whose claim is misrepresentation, which does seem to be in the complaint, then misrepresentation is in the list of wrongful acts. I mean, can we, given how California defines the duty to defend, can we step back and say, well, as Judge Berzon said, this doesn't look like an employment practice to me, or are given the breadth of the duty to defend, do we just have to say technically it would seem to be at least potential, there's a potential for coverage? I really think you have to look at what was the scope of coverage that was afforded in the first place. And even though the duty to defend, you know, is broader than the duty to indemnify, it's not unending. It doesn't go off into perpetuity. There is a limit to what was the scope of coverage. And if you look at the language of the insuring clause and the enumerated acts, and I understand you're focused on the employment, well, the key is employment related misrepresentations. And, you know, it's very hard to even articulate how this could be an employment related misrepresentation. It doesn't seem to germinate from any of Mr. Young's duties or obligations as an employer. The purpose of that would be if he had harassed Foltz or told him something. That's not the point of the claim. The claim was for contribution or indemnity because of Mr. Young's conduct outside of working for TRI. Can I go back for a moment to something you said about there's sort of a question of who has to show that Foltz did or did not work solely for TRI. And under the broad rubric of duty to defend, where things are in equipoise, my understanding is that it's triggered for the insurer that the doubts or questions have to be resolved in favor of the insurer looking at the point when the duty to defend is triggered. So the question seems to be, well, what did Illinois Union know? Will the insurer know at the point where the duty to defend, where the claim was tendered? And if there's no knowledge that we know that Foltz was an independent contractor, if there's no knowledge whether he works solely for TRI or not, is that a doubt that has to be resolved in favor of the insurer, in favor of triggering that duty? I don't believe so. I think the scope of the information known to the insurer at the time was that, first of all, that this wasn't an employment practice. We weren't the insurer was not looking at this from the standpoint of an employment practices claim because of the nature of the conduct. But I know you're focused on the status of Mr. Foltz. And in that regard, there was no evidence to suggest that Mr. Foltz was working solely for TRI. In fact, it was just the opposite inference that was drawn from what was known at the time. But the letters that were sent, what did they say about this? The letters? The letters that were sent. Are you talking about the coverage letters? The coverage letters. I don't know, it's not clear in my mind right now if there was any reference to the, you're talking about the employment practices portion of this? Yes. Okay. I don't believe that coverage was requested under the employment practices liability section of the policy. It wasn't apparent to the insurer that that was even being discussed or triggered by this claim. With regard to the other issue, the directors and officers coverage, I gather from what you said that you're, at some point you took the broader view that everything TRI did was professional services, but that's not necessary for us to reach a resolve. Is that right? That seems like a harder argument when you have a lawyer who's actually doing law. Right. The notion that everything they did was professional does start to swallow the contract at some point. And is there any reason we need to reach that? I'm sorry, I'm sorry, I'm not really clear. You need to consider your broader argument about the reach of the professional exclusion. Your broader argument, as I understand it, being that everything that TRA does because it's a real estate consultant is professional. Well, I guess that I don't think you need to reach that question to answer the question. The scope is much narrower. Okay. I thought you were talking about the argument that Mr. Young had raised about the fact that in the briefs that the scope of exclusion Q rendered the policy illusory. Well, I was referring to that. Oh, okay. You start getting there if you start taking the broader view of what professional means. Right. I'm simply observing it. I don't think we need to deal with that. I agree with that. And I also point out that with respect to the illusory coverage argument, there is a carve-out in the exclusion for securities claims. I know that. But it still seems like a strange way to write a policy for a company that does largely does X to say that what you basically do isn't covered. But we don't need to get there because the issue here had to do with practicing law. I agree. Okay. I guess I'll also address one of the comments that was made about coverage provision L, which relates to the duty to defend. I believe at one point Mr. Young had argued that coverage would persist for an otherwise uncovered claim because there's a duty to defend. We cited case law in our brief on page 31, Golden Eagle, that pertains to that issue that there is no the duty to defend doesn't exist if there's no coverage at all. So I think that covers the issues, unless the Court has any questions. Thank you very much. Thank you. You have a couple minutes. Thank you. First, what is in the record on the employee question? You referred to something, and I don't know what it was. Yes, Your Honor. I would like to direct your attention. It's to the transcript, page 200. It's paragraph 8. This is the transcript. And this is the cross-complaint from TRI and Fultz against Young. And it says, Honor, about May 7, 2001, Rayburn Foods Incorporated retained TRI through its agent, John Fultz, to represent it as a business broker. There's no reference to this Keystone Financial. There's no reference to anything else. This is a direct conflict with what was pled in the Rayburn cross-complaint. Mr. Fultz was acting as an independent contractor solely for TRI. Excuse me. What you just read does not say that. No. What I'm saying, Your Honor, is that the record ---- But there was nothing in the record that says that Mr. Fultz was acting as an independent contractor solely for TRI. There's no where I could find where it says solely. You're correct, that that's a tribal issue of fact as to whether he was solely doing that or not. Well, it's only a tribal issue of fact if somebody has raised it. I mean, why couldn't you have put in a declaration? You didn't put in any evidence in the coverage litigation that you didn't put in a declaration saying Mr. Fultz was working as an independent contractor solely for TRI, so you didn't raise it as a tribal issue of fact. No, Your Honor. It is a tribal issue of fact. Why is it tribal if ---- This was a summary judgment motion, right? It was a summary judgment. It was pertinent extra evidence. You could have submitted it, right? It was for the purpose that we had to show the potential for coverage, and the carrier had to negate that coverage. There was the potential for the coverage. Any tribal issue of fact would have negated the ---- as a matter of law that the insurer had no duty to defend. It's not true as suggested by Illinois Union that you have to have a covered claim in order to get a defense. You need the potential for one. I understand that, but you had no obligation. There being nothing in the complaint suggesting that Mr. Fultz was an employee, if you wanted to raise a tribal issue of fact and a post-summary judgment on the question of whether there was coverage by the employee provisions of the policy, didn't you have to do something to suggest that he was, in fact, covered? We did, Your Honor. In the papers, in our moving papers and opposing papers, we said that he was that, that that ---- But you had no evidence. And that this pleading, that this pleading itself is the only matter of record, and it says he's only an agent of TRI. It doesn't say that. You just agreed with me it doesn't say that. No. Through its agent, John Fultz. It says it's his agent. It doesn't say that's all he does. No, but it doesn't say otherwise. That's my point. And in addition to those points, I want to go back to the first part, and that is that exclusion on professional services. One, Mr. Young could be personally liable as a director. There was allegations that he had authorized, consented or directed acts of either the employees or the agent, Mr. Fultz, that were having nothing to do with professional services as a lawyer. In addition, that carved-back wording of the exclusion was just a moonlighting provision to prevent somebody from going out to do professional services that did not benefit the company. And then, ultimately, I believe that when you have the carrier and he's ---- and the carrier is on notice, and remember, they only responded one time and only to TRI, never to Mr. Young. They never tendered ---- they never responded to the tender of this Fultz cross complaint. We never heard from them on this. And under the Title X of the insurance regulations, the policy of the insurance code is that the insurer has a duty to go find coverage for the insured, not for the insured to have to go out and understand completely its policy and say, here's where I'm covered. And in particular, that's really difficult here where Mr. Young never got a response from his insurer, and as we set forth in our papers to this Court, they waived those coverage provisions and or they should be estopped from asserting them. Thank you. Thank you very much. The case of Young v. Illinois Insurance Company is submitted.
judges: Noonan, Berzon, Ikuta